**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------X

| | |
|---|---|
| FLORENCE GENTILE, SCOTT NORRIS, and MARISSA GENTILE, individually and on behalf of all others similarly situated, | Index No. 1:23-cv-5358 |

FLORENCE GENTILE, SCOTT NORRIS,
and MARISSA GENTILE,
individually and on behalf of all others
similarly situated,

       Plaintiffs,

       v.

NCSPLUS INCORPORATED,
SUSAN HOLZMAN, and
ROBERT TIMMERMAN, JR.,

       Defendants.
--------------------------------------------------------X

Index No. 1:23-cv-5358

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiffs Florence Gentile, Scott Norris, and Marissa Gentle ("Plaintiffs"), all of whom are New York residents, brings this Class Action Complaint by and through their undersigned counsel against Defendants NCSPlus Incorporated ("NCSPlus"), Susan Holzman ("Ms. Holzman"), and Robert Timmerman, Jr. ("Mr. Timmerman, Jr.") (Ms. Holzman and Mr. Timmerman, Jr., collectively, the "Individual Defendants") (NCSPlus and the Individual Defendants, collectively, "Defendants"), individually and on behalf of a class of all other similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure, based upon personal knowledge with respect to themselves and their own acts, upon information and belief as to all other matters, and with the belief that all matters alleged herein are likely to have evidentiary support after reasonable opportunity for further investigation and discovery, state as follows.

## PRELIMINARY STATEMENT

1.      Defendants have repeatedly and egregiously violated the Fair Debt Collection

Practices Act (the "FDCPA").  These violations have entailed, without limitation, engaging in

harassment and threatening conduct, and disregarding numerous provisions under the FDCPA in

pursuing the collection of an alleged "debt" that is being disputed by Plaintiffs in litigation in

New York Supreme Court, Queens County, captioned *Robert L. Timmerman et al. v. Florence

Gentile et al.*, Case No. 728380/2021 (the "Supreme Court Litigation") and in New York City

Civil Court, Queens County, captioned *Robert Timmerman et al. v. Florence Gentile et al.*, Case

No. LT 301436-22/Q (the "Housing Court Litigation"), both of which have been consolidated for

joint trial.  The Plaintiffs/Petitioners in those lawsuits are the parents of the individual

Defendants in this action.

2.      Congress enacted the FDCPA in 1977 in response to the "abundant evidence of

the use of abusive, deceptive, and unfair debt collection practices by many debt collectors."  15

U.S.C. § 1962.  Congress concluded that "existing laws … [were] inadequate to protect

consumers" and sought to prohibit "misrepresentation or other abusive debt collection practices."

15 U.S.C. § 1962a(b) & (c).  The FDCPA prohibits conduct "to harass, oppress, or abuse any

person in collection with the collection of a debt."  15 U.S.C. § 1962e.  It also prohibits the use

of "false, deceptive, or misleading representation or means in connection with the collection of

any debt."  15 U.S.C. § 1962e.  It also prohibits communication with the consumer "if the debt

collector knows the consumer is represented by an attorney with respect to such debt."  15

U.S.C. § 1692d(a)(2).  It further prohibits the continued communication with a consumer if the

consumer disputes or "refuses to pay a debt."  15 U.S.C. § 1692d(c).  The FDCPA provides for a

private cause of action by consumers against debt collectors that fail to comply with the Act.  15 U.S.C. § 1962k.

3.      The Supreme Court and Housing Court Litigation both involve disputes over a residential lease at 43-23 Cornell Lane, Units A and B, Little Neck, NY 11363 (the "Property") where the Plaintiffs reside.  Robert L. Timmerman and Barbara H. Timmerman (the "Timmermans" or "Landlords") are the property owners of the Property, and have alleged, *inter alia*, that Plaintiffs owe rent under the residential lease (the "Alleged Debt").  They are not Defendants named in this litigation.  Plaintiffs have vigorously disputed the Alleged Debt in both the Supreme Court and Housing Court Litigation, and have asserted a number of counterclaims and defenses against the Timmermans, including, without limitation, breach of the warranty of habitability, constructive eviction, statutorily defined, harassment, and breach of contract.

4.      Upon information and belief, shortly prior to commencing the Supreme Court Litigation, and later the Housing Court Litigation, the children of the Timmermans, who are the defendants in this action, and not the Timmermans themselves, engaged NCSPlus, a debt collection agency, to seek the same alleged damages for unpaid rent as the Timmermans are pursuing in the Supreme Court Litigation.

5.      From this time, and continuing to the present, NCSPlus and the Individual Defendants have each engaged in collection efforts consisting of letters, harassing phone calls, and other abusive behavior seeking to collect the Alleged Debt.  They have continued to do so despite at least three letters and multiple other emails sent from the undersigned law firm advising the various Defendants of the undersigned law firm's representation of the Plaintiffs, that the Alleged Debt is in dispute and being litigated in the Supreme Court Litigation, and directing NCSPlus to stand down and cease unlawful collection efforts.  They have failed to do

so and continue to pursue the Alleged Debt, inclusive of NCSPlus sending collection letters directly to the Plaintiffs as recently as December 2022, and multiple other acts by the Individual Defendants, each of which individually and collectively prompted this action.

6.      Upon information and belief, this unlawful conduct is not an isolated incident, but rather part of the standard operations and practices of NCSPlus and its responsible persons and parties that are adversely affecting numerous other consumers in the State of New York in a substantially similar manner as Plaintiffs.  At the start, NCSPlus omits the required language in its validation/verification notice in its standard collection letter that is required under 15 U.S.C. §1962g(a)(4) of the FDCPA, which affects all consumers subject to a collection action from NCSPlus.   In addition, NCSPlus is continuing to engage in collection efforts after being notified of a disputed debt.  Further, NCPLUS is failing to refrain from contacting consumers despite knowing that the consumers are represented by an attorney.  Each of these things are independent and separate violations of the FDCPA.  As such, Plaintiffs bring their claim for violations of the FDCPA against NCSPlus as a class action to pursue a collective outcome for all similarly situated consumers that have been victims of NCSPlus's unlawful conduct.

## PARTIES

7.      Each of Plaintiffs Florence Gentile, Scott Norris, and Marissa Gentle is a natural person who is a citizen of the State of New York residing in Nassau County, New York.

8.      Each Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

9.      Defendant NCSPlus Incorporated is a Delaware corporation with its principal place of business located at 117 E. 24th Street, 5th Floor, New York, NY 10010.

10.    NCSPlus has transacted, and continues to transact, business within the State of New York.

11.    NCSPlus regularly collects or attempts to collect debts asserted to be owed to others.

12.    NCSPlus is regularly engaged, for profit, in the collection of debts allegedly owed by consumers.

13.    The principal purpose of NCSPlus's business is the collection of consumer debts.

14.    NCSPlus uses instrumentalities of interstate commerce, including mail and telephone, in furtherance of its debt collection business.

15.    NCSPlus is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

16.    Defendant Susan Holzman is a natural person who, upon information and belief, is a citizen of the State of California and resides in the State of California.

17.    Defendant Robert Timmerman, Jr. is a natural person who, upon information and belief, is a citizen of the State of New York and resides in the State of New York.

18.    The Individual Defendants have regularly collected or attempted to collect debts asserted to be owed to others, to wit, their parents.

19.    The Individual Defendants have regularly engaged in the collection of debts allegedly owed by consumers to another person.

20.    The Individual Defendants have each personally engaged in conduct prohibited under the FDCPA, as further discussed herein.

21.    Each of the Individual Defendants is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

22.     The acts of Defendants as described herein were performed by Defendants or on Defendants' behalf by their owners, officers, agents, and/or employees acting within the scope of their actual or apparent authority.  As such, all references to Defendants in this Complaint shall mean Defendants or their owners, officers, agents, and/or employees.

## JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, and 15 U.S.C. § 1692 et seq.  This Court has pendent jurisdiction over the state law claims in this action pursuant to 28 U.S.C. § 1367.

24.     This court has jurisdiction over Defendants because they regularly conduct and transact business in the State of New York.  As to NCSPlus, its principal place of business is located in New York, NY.  As to the Individual Defendants, Mr. Timmerman, Jr. is, upon information and belief, a resident of the State of New York and/or both Individual Defendants regularly conduct and transact business in the State of New York.

25.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the acts and occurrences that gave rise to this dispute occurred substantially in New York, New York.

## CLASS ALLEGATIONS

26.      Plaintiffs bring their claim for violations under the FDCPA against NCSPlus (Count I) pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3).

27.     The proposed class (the "Plaintiff Class") consists of:

a.  All consumers, as defined under the FDCPA, with addresses in the State of New York; and

b. To whom NCSPlus sent a collection letter attempting to collect a consumer debt, which collection letter was sent on or after a date one year prior to the filing of this action, and on or before a date twenty-one days after the filing of this action; <u>and</u>

c. The collection letters sent by NCSPlus contained defective validation/verification notices (as described further herein) as follows:

**<u>If you notify this office writing within 30 days from receiving this notice, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification.</u>**

This language fails in form and substance to satisfy the statutorily required language.  The statute, 15 U.S.C. §1962g(a)(4) of the FDCPA, requires:

"a statement that if the consumer notifies the debt collector in writing within the thirty-day period [after receipt of the notice] that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector."  The above language is sloppy and ambiguously drafted.  It fails to advise the consumer of what would form the basis for such notice to the debt collector, as it leaves out the key language about notifying the debt collector "that the debt, or any portion thereof, is disputed" in the operative sentence, instead stating it separately with no connection to its basis, thereby rendering the notice devoid of its statutory intent.

By NCSPlus's failure to include this language, these and all similarly situated consumers are not on any meaningful notice at all as to what would form the basis for the debt collector's obligation to obtain verification of the debt.  The notice is not just sloppy, leaving out the word "in" before "writing," which may confuse and dissuade some in light of the grammatical syntax defect, but the failure to include the disputed debt language reveals what is at best a gross disregard for the purpose of the mandated notice.  That failure has almost

certainly reduced the number of consumers availing themselves of the validation they are entitled to; and/or

    d.  Any of the following events occurred:

       i.  NCSPlus was notified that the debt was in dispute or the consumer refused to pay the debt, and engaged in any acts or conduct to pursue the debt thereafter;

      ii.  NCSPlus was notified or otherwise knew that the consumer was being represented by an attorney, and engaged in any acts or conduct to contact or communicate with the consumer thereafter; and/or

     iii.  NCSPlus received a request to provide a copy of the verification of the debt or a copy of the judgment, and either: (a) continued debt collection efforts in any manner prior to providing a copy of the verification of the debt or a copy of the judgment; or (b) failed to provide a copy of the verification of the debt or a copy of the judgment within 30 days.

28.    The identities of all class members are readily ascertainable from the records of NCSPlus and those persons, companies, and entities on whose behalf they attempt to collect and/or have purchased debts.

29.    Excluded from the Plaintiff Class are Defendants and all officers, members, partners, managers, directors, and employees of the Defendants and their respective immediate families, and legal counsel for all parties to this action, and all members of their immediate families.

30.     There are questions of law and fact common to the Plaintiff Class, which common issues predominate over any issues involving only individual class members.  The principal issue is whether NCSPlus's written communications to consumers violate the FDCPA.

31.     Plaintiffs' claims are typical of the class members, as they are based upon the same facts and legal theories.  Plaintiffs will fairly and adequately protect the interest of the Plaintiff Class.  Plaintiffs have retained counsel with experience in handling consumer lawsuits and complex legal issues, and neither Plaintiffs nor their attorneys have any interests that may cause them not to pursue this action vigorously.

32.     This action has been brought, and may be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community interest in the litigation:

    a.  Numerosity.  Plaintiffs are informed and believe, and hereby allege, that the Plaintiff Class is so numerous that joinder of all members would be impractical.  This belief is based on the fact that NCSPlus represents on its website that it is "collecting slow and delinquent accounts for over 35,000 clients in over 200 categories of business."  *See* https://www.ncsplus.com/about.html, last accessed February 14, 2023.

    b.  Common Questions Predominate.  Common questions of law and fact exist as to all members of the Plaintiff Class and those questions' predominance over any questions or issues involving only individual class members.  The principal issue is whether NCSPlus's written communications to consumers violate the FDCPA.

    c.   Typicality.  Plaintiffs' claims are typical of the claims of the class members. Plaintiffs and all members of the Plaintiff Class have claims arising out of NCSPlus's common course of conduct, as alleged herein.

    d.   Adequacy.  Plaintiffs will fairly and adequately protect the interest of the class members insofar as Plaintiffs have no interests that are adverse to the absent class members.  Plaintiffs are committed to litigating this matter vigorously.  Plaintiffs have also retained experienced counsel.  Neither Plaintiffs nor their counsel have any interests that may cause them not to pursue the instant class action lawsuit vigorously.

    e.   Superiority.  A class action is superior to the other available means for the fair and efficient adjudication of this controversy because individual joinder of all members would be impracticable.  Class action treatment will permit a large number of similar situated persons to prosecute their common claims in a single forum efficiently and without necessary duplication of effort and expenses that individual actions would engender.

33.    Certification of a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate because common questions of law and fact to all members of the Plaintiff Class predominate over any questions affecting an individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

34.    Plaintiff reserves the right to, at the time of class certification motion, seek to certify a class or classes only as to particular issues pursuant to Fed. R. Civ. P. 23(c)(4) subject to further investigation and discovery.

## FACTUAL ALLEGATIONS

35.    Plaintiffs repeat, reiterate, and incorporates the allegations contained in the previous paragraphs as if fully set forth herein.

36.    The Individual Defendants have alleged that Plaintiffs owe the Alleged Debt related to alleged rent for the residential lease of the Property at which each of the Plaintiffs resided, but which lease (contract) the Individual Defendants were not party to.

37.    The Alleged Debt is an alleged obligation of Plaintiffs to pay money to third parties, the non-party parents of the Individual Defendants ("Non-Party Lessors") arising out of a residential lease.  This is a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes.

38.    The Alleged Debt does not arise from any business enterprise of Plaintiffs.

39.    The Alleged Debt is a "debt" as defined by 15 U.S.C. § 1962a(5).

40.    Plaintiffs have disputed that they owe rent for the Property on the basis that they were initially partially actually evicted from portions of their home and later entirely constructively evicted both under common law and under anti-harassment statutes after having made dozens of requests for habitability repairs at the Property that were not repaired by the Non-Party Lessors , including, but not limited to, the following:

> a.    Electrical service at the Property is dangerously insufficient or improperly wired, intermittent, and shorted out repeatedly;
>
> b.    Major appliances provided by the Non-Party Lessors as part of the residential lease are powered through extension cords throughout the Property due to the limited availability of electrical supply, outlets, and insufficient power supply

to these circuits, creating an unsafe condition that may give rise to an

electrical fire at the Property;

c.  An endemic mold condition throughout the Property, which infected the walls,

furniture, bedding, and cabinets, and which spread to Plaintiffs' clothing, and

created conditions that were hazardous to the health, safety, and welfare of the

tenants.  This condition was in part due to an inadequate sump-pump provided

and owned by the Non-Party Lessors to drain water, which collected in the

basement of the Property, combined with insufficient and ineffective

ventilation, both of which are the result of negligent design and maintenance

by the Non-Party Lessors and which were all known to the Non-Party Lessors;

d.  There is a slope in the Property leading from the driveway to the garage,

where due to the defective design of the Property and improper water sealing

by the Non-Party Lessors, water accumulated in the garage and basement of

the Property;

e.  Several appliances were broken and in need of repair, some of which

Plaintiffs have had to replace at their own expense including the refrigerator, a

built-in microwave, burst piping, and broken smoke and carbon monoxide

detectors, even though the Non-Party Lessors were required by law to provide

and maintain these items as the landlord of the Property; and

f.  Many of Plaintiffs' personal items were destroyed by flooding in the basement

of the Property due to inadequate construction, design, drainage, and water-

seals in the basement and garage, for which the Non-Party Lessors have not

compensated Plaintiffs nor taken any efforts to fix these underlying issues.

41.     Despite these issues and disputes raised by Plaintiffs, the Non-Party Lessors failed to address them. Instead, the Individual Defendants engaged in a course of harassing conduct intended to intimidate, coerce, and threaten Plaintiffs to quit the Property, cease making repair requests, and pay them rent for which they are not responsible.

42.     The Individual Defendants engaged in the following courses of conduct that are prohibited under New York Law, in a pattern and practice designed to unlawfully and in violation of the FDCPA, improperly collect a claimed debt on behalf of a creditors who are not themselves, by engaging in conduct that is retaliatory in nature and barred by New York State Real Property Law ("RPL") § 223-b in that the Individual Defendants caused to be served a notice of termination on Plaintiffs in retaliation for their good faith complaints of conditions and violations in need of repair in their residence. A rebuttable presumption arises that the constructive eviction and the eviction proceedings against Plaintiffs, acts to which the Individual Defendants were party, were retaliatory in nature due to the proximity of the complaints and the filing of the eviction lawsuits. Defendants are owed civil penalties, actual damages, and attorney's fees pursuant to RPL § 223-b.

43.     Upon information and belief, the Individual Defendants even called Child Protective Services ("CPS") on Plaintiffs falsely alleging that Plaintiffs "endangered" "young children" because they allegedly smoke cigarettes and marijuana around "young" children, including a "4-year-old." These complaints were knowingly and materially false and intentionally misidentified the ages of the children, reducing them by more than ten years, as the children were actually 15- and 17-year-old teenagers at the time of the Individual Defendants' calls to CPS, and the allegation about marijuana was entirely false and slanderous. Despite knowing this, the Individual Defendants filed a false report with the intent of alarming an agency

charged with protecting the welfare of children, potentially leading to the arrest of Plaintiffs and/or the removal of the teenaged children from the home. They did so with reckless disregard for the welfare of these children and the adult parents, in an effort to harass Plaintiffs into vacating the premises and/or paying rent that was lawfully withheld because of the conditions which the Individual Defendants and Non-Party Lessors refused to correct. Upon recognizing the false and malicious nature of the complaint, the CPS investigator warned the Individual Defendants that if they did anything similar in the future, they could be subject to criminal prosecution. Precious CPS resources were diverted from truly needy children endangering both them and this innocent family. Individual Defendants recklessly and willfully put their pecuniary interests above the health, safety, welfare and even liberty of Plaintiffs and their children.

44.     Individual Defendants caused a "Notice of Termination" to be served on Defendants on October 14, 2021, in retaliation for Plaintiffs' habitability complaints.

45.     Individual Defendants have engaged in a pattern of harassing behavior against Defendants. Pursuant to relevant portions of Chapter 2 of the New York City Housing Maintenance Code (Article 1, § 27-2004, sub-paragraph 48 and id. at § 27-2005; id. at § 27-2115 et seq.; id. at § 27-2115(m)), and Sections 24 and 25 of Part M of the Housing Stability and Tenant Protection Act ("HSTPA") enacted in 2019, Individual Defendants have engaged in repeated acts or omissions of such significance as to substantially interfere with or disturb the comfort, repose, peace or quiet of Plaintiffs lawfully entitled to occupancy of such dwelling unit and that cause or are intended to harass and cause Plaintiffs to vacate such dwelling unit or to surrender or waive any rights in relation to such occupancy.

46.     Individual Defendants' actions, set forth above and below, did partially actually and constructively evict Plaintiffs and their children by intimidating, harassing and vexing them

into ultimately abandoning and vacating the subject residence and their lawful right to remain there peaceably.

47.    At some point in 2021, upon information and belief, the Individual Defendants engaged NCSPlus to collect the Alleged Debt.

48.    Upon information and belief, Defendants collect and attempt to collect debts incurred or alleged to have been incurred for personal, family, or household purposes on behalf of creditors using the United States Postal Service, telephone, and/or internet.

49.    On or about October 25, 2021, Plaintiffs received a collection notice from NCSPlus that was addressed to Florence Gentile in the amount of $6,050.00 seeking rent to be paid to Barbara Timmerman as payee.  This was the first collection notice addressed to Florence Gentile from NCSPlus.  No further communications were sent by NCSPlus within five days after this initial collection notice.

50.    On or about November 16, 2021, Plaintiffs received a collection notice from NCSPlus that was addressed to Scott Norris in the amount of $10,400.00 seeking rent to be paid to Barbara Timmerman as payee.  This was the first collection notice addressed to Scott Norris from NCSPlus.  No further communications were sent by NCSPlus within five days after this initial collection notice.

51.    In both of the collection notices referenced in the foregoing two paragraphs, NCSPlus states as follows:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, the office will assume this debt is valid.  **If you notify this office writing within 30 days from receiving this notice, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification.**  If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

The language in the second sentence above that is in bold and underline shall be referred to herein as the "Defective Validation Notice."

52.    The FDCPA requires a debt collector to provide written notice to a consumer containing "a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector." 15 U.S.C. § 1962g(a)(4).

53.    The Defective Validation Notice violates 15 U.S.C. § 1962g(a)(4) in numerous ways by omitting specifically: (i) that the consumer must state that "the debt, or any portion thereof, is disputed" in order to receive a copy of the verification or judgment of the debt, all of which is absent from the second sentence of the notice sent by NCSPlus; and (ii) that the consumer must notify the debt collector "in writing," which is also absent from the second sentence of the notice.  The language of the second sentence in NCSPlus's notice is ambiguous and sloppily drafted and confusing to the consumer as to what may be required to receive a copy of the verification of the alleged debt or judgment.

54.    Upon information and belief, the Defective Validation Notice is part of the standard template used by NCSPlus in its collection notices sent to all consumers.

55.    None of these collection notices were valid in the first place because the Alleged Debt is not a valid debt, as the validity of the debt is in dispute as set forth above.

56.    On December 24, 2021, the Non-Party Lessors filed a Summons and Complaint in the Supreme Court Litigation.

57.     On and possibly after January 14, 2022, after that Litigation was commenced, Ms. Holzman engaged in multiple communications directly with Plaintiffs through text message and email, despite knowing since at least November 1, 2021 that they were represented by counsel, stating in pertinent part that "Sending a check made out to Barbara Timmerman for $19,400 today makes your rent obligation and fees since September paid;" "If your debt continues to go unpaid, the collection agency will send your debt to the credit bureaus and affect your credit;" "If no response to this text and email today, we will direct the collection agency to continue with their collection efforts and reporting to the bureaus;" and "I assume that you were advised by your lawyer … on your legal obligations to your landlord, response to the debt collection agency, response in making a payment today, and the effects on your credit report."

58.     On and after November 8, 2022, Individual Defendant Robert S. Timmerman engaged in multiple communications directly with and/or copied to Plaintiffs through email, despite knowing since at least November 1, 2021, or November 8, 2021, at the latest, that they were represented by counsel.

59.     On February 18, 2022, the undersigned law firm sent a letter to NCSPlus with the subject line "Cease and Desist Notice with Demand for Debt Verification" (the "First Cease and Desist Letter").  In the First Cease and Desist Letter, NCSPlus was informed that the undersigned law firm represents Plaintiffs, that the Alleged Debt was in dispute and subject to the pending Supreme Court Litigation, and that NCSPlus must cease and desist from attempting to collect the Alleged Debt.  The Cease and Desist Letter further stated that "NCSPlus Incorporated may not send any further demands, documentation, letters of correspondence related to these alleged debts to Mr. Norris or Ms. Gentile.  All future correspondence should be sent to this office addressed to the undersigned."

60.     NCSPlus has failed to abide by the Cease and Desist Letter, and instead continued to send collection notices and communicate with Plaintiffs directly in blatant knowing and willful violation of the FDCPA.

61.     NCSPlus sent a collection notice addressed to Scott Gentile in the amount of $10,400.00 seeking rent to be paid to Barbara Timmerman as payee.  Upon information and belief, such collection notice was postmarked after February 18, 2022, the date of the Cease and Desist Letter.

62.     On February 22, 2022, as postmarked, NCSPlus sent a collection notice addressed to Florence Gentile in the amount of $6,050.00 seeking rent to be paid to Barbara Timmerman as payee.

63.     On March 3, 2022, the undersigned law firm sent a second letter to NCSPlus with a copy to Christopher Rehkow, Chief Executive Officer of NCSPlus, with the subject line "Final Cease and Desist Notice with Second Demand for Debt Verification" (the "Second Cease and Desist Letter").  In the Second Cease and Desist Letter, NCSPlus and Mr. Rehkow were informed that NCSPlus "flagrantly violated the FDCPA by continuing to send harassing debt collection notices to [the undersigned law firm's] clients" and provided a "final cease and desist demand to stop harassing [Plaintiffs] and "**not under any circumstances** send any further demands, letters, or correspondence relating to these alleged debts to Mr. Norris or Ms. Gentle."

64.     On or about April 8, 2022, NCSPlus sent a letter to the undersigned law firm (the "Account Closed Letter").  In the Account Closed Letter, NCSPlus stated that the "account has been closed" and "We have closed our files."

65.    With such Account Closed Letter, NCSPlus enclosed certain documents in response to the request for debt verification initially made on February 18, 2022, approximately 49 days after the initial request was made.

66.    Despite sending the Account Closed Letter indicating that NCSPlus had closed its account and files regarding the Alleged Debt, and despite knowing that Plaintiffs were represented by counsel, and that they disputed the debt which was already the subject of litigation, NCSPlus has brazenly continued to send collection notices and communicate with Plaintiffs directly in blatant knowing and willful violation of the FDCPA.

67.    On or about May 17, 2022, Plaintiffs received a collection notice from NCSPlus that was addressed to Marissa Gentile in the amount of $31,025.00 seeking rent to be paid to Barbara Timmerman as payee.

68.    On May 20, 2022, the undersigned law firm sent a third letter to NCSPlus with a copy to Christopher Rehkow, Chief Executive Officer of NCSPlus, with the subject line "Debt Dispute, Cease and Desist Notice and Demand for Debt Verification" (the "Third Cease and Desist Letter").  In the Third Cease and Desist Letter, NCSPlus and Mr. Rehkow were informed that NCSPlus had previously sent the Account Closed Letter on April 8, 2022 notifying that NCSPlus had "closed [its] files" on the matter, and admonished NCSPlus for continuing to pursue the same Alleged Debt.  In addition, the Third Cease and Desist Letter requested debt validation for the debt referenced in NCSPlus's May 17, 2022 in the amount of $31,025.00.  The Third Cease and Desist Letter further provided a "final cease and desist demand to stop harassing [Plaintiffs]" and "**not under any circumstances** send further demands, documentation, letters, or correspondence relating to these alleged debts … to Scott Norris, Marissa Gentile, or Florence Gentile."

69.     NCSPlus has ignored the Third Cease and Desist Letter, and has subsequently sent at least two further collection letters to Barbara Gentile.

70.     On or about August 2, 2022, NCSPlus sent a collection notice addressed to Marissa Gentile in the amount of $31,025.00.  Such August 2, 2022 letter states that "AS AGENTS FOR YOUR CREDITOR, WE HAVE WRITTEN TO YOU IN THE PAST" and "OUR RECORDS SHOW AN UNPAID ACCOUNT IN THE ABOVE STATED AMOUNT DUE AND OWING BY YOU."  Such letter failed to enclose any documents verifying the alleged "debt," as had been previously requested in writing on May 20, 2022.

71.     Again, on or about December 5, 2022, NCSPlus sent a collection notice addressed to Marissa Gentile in the amount of $31,025.00.  Such December 5, 2022 letter states that "YOUR CONTINUED FAILURE TO RESPOND TO OUR REPEATED DEMANDS FOR PAYMENT HAS LEFT US NO ALTERNATIVE BUT TO TAKE THE FOLLOWING ACTION" and that "UNLESS PAYMENT IS RECEIVING WITHIN THE NEXT TEN DAYS, OUR CLIENT HAS AUTHORIZED US TO REPORT THIS DELINQUENT ACCOUNT TO ONE OR MORE NATIONAL CREDIT BUREAUS.  THIS MAY ADVERSELY AFFECT YOUR ABILITY TO OBTAIN CREDIT…"  Such letter failed to enclosed any documents verifying the alleged "debt," as has been previously requested in writing on May 20, 2022.

72.      NCSPlus has not provided any copies of any documents verifying the alleged debt of $30,250.00 referenced in NCSPlus's May 17, 2022 letter at any time.

73.     Throughout the course of 2022, Plaintiffs have received numerous telephone calls from NCSPlus's representatives seeking to collect the Alleged Debt, comprising harassment and abusive conduct.

74.     In addition, throughout the course of 2021, 2022 and 2023, each of the Individual Defendants have engaged in conduct seeking to collect the Alleged Debt, comprising harassment and abusive conduct.  The conduct continues until the present.

75.     During the months of March through May 2022 and again in the fall and winter of 2022, Mr. Timmerman, Jr. threatened to enter the Property on numerous occasions, and threatened to videotape Plaintiffs.  During this time, Mr. Timmerman, Jr. threatened to enter  into the backyard of the Property without Plaintiffs' authorization and to knock repeatedly on the doors at the Property, seeking to gain entry with a video camera.

76.     On or about March 7, 2022, and again on May 17, 2022, Mr. Timmerman, Jr. sent emails threatening to enter the Property.  Ms. Holzman was copied on these emails.  In these emails, Mr. Timmerman, Jr., stated that the purpose of entering the Property was the "inspection" of repair items, but no such "inspection" was needed as the Individual Defendants and the Non-Party Lessors had already made clear that they had no intention of correcting the habitability conditions.  Such "inspection" was a subterfuge based on false pretenses to seek to gain access to the Property for the primary purpose of harassing and intimidating Plaintiffs and their children as they had been doing.

77.     Upon information and belief, Ms. Holzman and Mr. Timmerman, Jr., were jointly involved and acted to threaten to enter the Premises as a means to intimidate Plaintiffs into paying the Alleged Debt.

## CAUSES OF ACTION

### COUNT ONE
**Violations of 15 U.S.C. § 1692g(a)(4) of the Fair Debt Collection Practices Act Against NCSPlus**

78.     Plaintiff restates the allegations contained in the paragraphs above as if fully set forth herein.

79.     15 U.S.C. § 1692g(a)(4) requires a debt collector to send a consumer a written notice containing the following language in its initial communication or within five days after the initial communication with a consumer in connection with the collection of any debt: "a statement that if the consumer notifies the debt collector in writing within the thirty-day period [after receipt of the notice] that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector."

80.     NCSPlus made initial communications addressed to each of the Plaintiffs via letters sent by mail, as described above.

81.     NCSPlus did not send the above-referenced notice required pursuant to 15 U.S.C. § 1692g(a)(4) to any of the Plaintiffs in its initial communication or within five days after the initial communication with Plaintiffs in connection with the collection of the Alleged Debt.

82.     For the foregoing reasons, NCSPlus violated 15 U.S.C. § 1692g(a)(4), and is liable to Plaintiffs therefor.

### COUNT TWO
**Violations of 15 U.S.C. § 1692c(a)(2) of the Fair Debt Collection Practices Act Against All Defendants**

83.     Plaintiffs restate the allegations contained in the paragraphs above as if fully set forth herein.

84.     15 U.S.C. § 1692c(a)(2) prohibits a debt collector from communicating with a consumer in connection with the collection of any debt "if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorneys' name and address."

85.     NCSPlus knew that Plaintiffs are being represented by the undersigned law firm on or about February 18, 2022, upon receipt of the First Cease and Desist Letter.  The undersigned law firm sent a total of three Cease and Desist Letters to NCSPlus, informing NCSPlus to refrain from contacting Plaintiffs.

86.     NCSPlus failed to refrain from communicating directly with Plaintiffs.  This entailed sending numerous letters to Plaintiffs after February 18, 2022, including as recently as December 2022.

87.     For the foregoing reasons, NCSPlus violated 15 U.S.C. § 1692c(a)(2), and is liable to Plaintiffs therefor.

88.     Susan Holzman knew that Plaintiffs were being represented attorneys since at least on or about November 1, 2021, as set forth in paragraph 58 above, when she communicated with their then counsel, Mark Knuckles, Esq.

89.     Susan Holzman failed to refrain from communicating directly with Plaintiffs. This entailed sending numerous texts and letters and attempts to call Plaintiffs on and after November 1, 2021 and January 14, 2022.

90.     For the foregoing reasons, Susan Holzman violated 15 U.S.C. § 1692c(a)(2), and is liable to Plaintiffs therefor.

91.     On and after November 8, 2022, Individual Defendant Robert S. Timmerman engaged in multiple communications directly with and/or copied to Plaintiffs through email,

despite knowing since at least November 1, 2021, or November 8, 2021, at the latest, that they were represented by counsel.

92.    Individual Defendant Robert S. Timmerman failed to refrain from communicating directly with Plaintiffs.  This entailed sending numerous texts and letters and attempts to call Plaintiffs on and after November 1, 2021,

93.    For the foregoing reasons, Individual Defendant Robert S. Timmerman violated 15 U.S.C. § 1692c(a)(2), and is liable to Plaintiffs therefor.

## COUNT THREE
### Violations of 15 U.S.C. § 1692c(c) of the Fair Debt Collection Practices Act Against NCSPlus

94.    Plaintiffs restate the allegations contained in the paragraphs above as if fully set forth herein.

95.    15 U.S.C. § 1692c(c) prohibits a debt collector from communicating with a consumer in connection with the collection of any debt "if a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer."

96.    NCSPlus was notified in writing that Plaintiffs refused to pay the Alleged Debt and wanted NCSPlus to cease further communication with Plaintiffs directly on or about February 18, 2022 upon receipt of the First Cease and Desist Letter.  The undersigned law firm sent a total three Cease and Desist Letters to NCSPlus, informing NCSPlus that the Alleged Debt was disputed and subject to the Supreme Court Litigation, and that NCSPlus should cease further communication with Plaintiffs.

97.    NCSPlus failed to refrain from communicating directly with Plaintiffs.  This entailed sending numerous letters to Plaintiffs after February 18, 2022, including as recently as December 2022.

98.    For the foregoing reasons, NCSPlus violated 15 U.S.C. § 1692c(a)(2), and is liable to Plaintiffs therefor.

**<u>COUNT FOUR</u>**
**Violations of 15 U.S.C. § 1692d of the Fair Debt Collection Practices Act**
**Against All Defendants**

99.    Plaintiffs restate the allegations contained in the paragraphs above as if fully set forth herein.

100.    15 U.S.C. § 1692e prohibits a debt collector from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."

101.    NCSPlus has engaged in conduct that has harassed, oppressed, and abused Plaintiffs by, without limitation, continuing to contact Plaintiffs and pursue the Alleged Debt, despite the fact that NCSPlus and its Chief Executive Officer have received three Cease and Desist Letters from the undersigned counsel.

102.    The Individual Defendants have engaged in conduct that has harassed, oppressed, and abused Plaintiffs by, without limitation, threatening to enter the Property, and engaging in hostile acts at the Property, including knocking on doors and entering the backyard of the Property and threatening to film Plaintiffs, filing false reports with Child Protective Services, engaging in practices designed to intimidate Plaintiffs and their children to vacate their residence, and communicating with Plaintiffs directly about an alleged but disputed debt that was the subject of litigation to which the Individual Defendants were not party, nor were they

themselves attorneys for the parties, despite knowing that Plaintiffs were represented by attorneys.

103.    For the foregoing reasons, each Defendant violated 15 U.S.C. § 1692d, and is liable to Plaintiffs therefor.

**COUNT FIVE**
**Violations of 15 U.S.C. § 1692f of the Fair Debt Collection Practices Act**
**Against All Defendants**

104.    Plaintiffs restate the allegations contained in the paragraphs above as if fully set forth herein.

105.    15 U.S.C. § 1692f prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

106.    NCSPlus has used unfair or unconscionable means in connection with the collection of the Alleged Debt by, among other things, continuing to engage in collection efforts against Plaintiffs despite receiving the three Cease and Desist Letters, including threatening to report Plaintiffs to credit bureaus.

107.    The Individual Defendants have unfair or unconscionable means in connection with the collection of the Alleged Debt by, among the other things set forth above, using a subterfuge to enter the Property under false pretenses and violating cease and desist letters.

108.    For the foregoing reasons, each Defendant violated 15 U.S.C. § 1692e, and is liable to Plaintiffs therefor.

**COUNT SIX**
**Violations of 15 U.S.C. § 1692f of the Fair Debt Collection Practices Act**
**Against All Defendants**

109.    Plaintiffs restate the allegations contained in the paragraphs above as if fully set forth herein.

110.    15 U.S.C. § 1692f prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

111.    NCSPlus has used false, deceptive, and misleading representations or means in connection with the collection of the Alleged Debt.

112.    The Alleged Debt is being vigorously disputed in the Supreme Court Litigation. Indeed, at this time Plaintiffs have a judgment on their counterclaims in the New York State Supreme Court Litigation, which judgment, by virtue of its inextricable support for their defenses to the claims that a debt for rent is owed, also collaterally and judicially estops the Non-Party Lessors and all Defendants from pursuing those claims as a matter of law. That judgment was entered on November 25, 2022. The Individual Defendants are actually on notice of that judgment, and NCSPlus is constructively on notice of it as they were advised of the litigation and had an obligation to refrain from further collection activity and monitor the status of that litigation before recommencing collection activity. Nevertheless, on or about December 5, 2022, NCSPlus sent a collection notice addressed to Marissa Gentile in the amount of $31,025.00. Thus, there is no valid debt to pursue and all such activity is in violation of 15 U.S.C. § 1692e.

113.    Despite being informed of the Supreme Court Litigation on three separate occasions, NCSPlus has continued to pursue the Alleged Debt, and stated in communications that Plaintiffs owe $30,250.00 to Barbara Timmerman, which is false, deceptive, and misleading.

114.    The Individual Defendants have used false, deceptive, and misleading representations or means in connection with the collection of the Alleged Debt as set forth above.

115.    For the foregoing reasons, each Defendant violated 15 U.S.C. § 1692e, and is liable to Plaintiffs therefor.

## COUNT SEVEN
### Violations of 15 U.S.C. § 1692g(b) of the Fair Debt Collection Practices Act
### Against NCSPlus

116.    Plaintiffs restate the allegations contained in the paragraphs above as if fully set forth herein.

117.    15 U.S.C. § 1692g(b) requires a debt collector to cease collection of a debt if the debt collector receives notice that debt is disputed and mails a copy of the verification of the debt or a copy of a judgment to the consumer.

118.    NCSPlus has continued to pursue the Alleged Debt and failed to provide a verification of the Alleged Debt.

119.    On or about May 17, 2022, Plaintiffs received a collection notice from NCSPlus that was addressed to Marissa Gentile in the amount of $31,025.00 seeking rent to be paid to Barbara Timmerman as payee.  On May 20, 2022, the undersigned law firm sent the Third Cease and Desist Letter to NCSPlus, disputing the Alleged Debt and demanding verification of the alleged $31,025.00 amount.

120.    NCSPlus has failed to provide any verification whatsoever with regard to the alleged $31,025.00 amount.

121.    NCSPlus has continued to pursue the Alleged Debt by, without limitation, continuing to send collection notices addressed to Marissa Gentile, and threatening to report Marissa Gentile to credit bureaus, in August and December 2022 as set forth above.

122.    For the foregoing reasons, NCSPlus violated 15 U.S.C. § 1692g(b), and is liable to Plaintiffs therefor.

**COUNT EIGHT**
**Violations of New York General Business Law § 349**
**Against All Defendants**

123.    Plaintiffs restate the allegations contained in the paragraphs above as if fully set

forth herein

124.    Each of the Defendants have engaged in deceptive acts and practices, as described

herein.

125.    Defendants' conduct was materially misleading in the pursuit of the Alleged Debt

by, among other things, continuing to pursue a debt that is being litigated in the Supreme Court

Litigation, and engaging in misleading and deceptive acts to pursue the Alleged Debt.

126.    Defendants' conduct was committed by Defendants in the conduct of a business,

trade or commerce or the furnishing of a service in New York State.

127.    Defendants' conduct was consumer-oriented toward Plaintiffs, as Defendants'

conduct involved collection efforts to collect an alleged consumer debt.

128.    Each Plaintiff is a reasonable consumer.

129.    Defendants' conduct would mislead a reasonable consumer.

130.    Defendants' conduct caused Plaintiffs to suffer injury.

131.    For the foregoing reasons, each Defendant violated New York General Business

Law § 349, and is liable to Plaintiffs therefor.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request judgment be entered as follow:

A.  Finding Defendants' actions violate the FDCPA and New York General Business
    Law § 349.

B.  Awarding damages to Plaintiff and the Plaintiff Class pursuant to 15 U.S.C. § 1962k.

C.  Awarding Plaintiff's attorneys' fees pursuant to 15 U.S.C. § 1962k, calculated on a
    lodestar basis.

D.  Awarding the costs of this action to Plaintiffs.

E.  Awarding pre-judgment and post-judgment interest.

F.  That the Court grant Plaintiff such other and further relief as it considers just and
    proper.

DATED: June 23, 2023

Respectfully submitted,

CAPELL BARNETT MATALON & SCHOENFELD LLP

By: _____

Travis M. Tatko (TT7349)
1385 Broadway, 12th Floor
New York, NY 10018
Phone: (212) 661-1144
Fax:    (888) 419-0650
TTatko@CBMSLaw.com